WILLIAM B. HILL ET AL. v. DAVID S. STETSON, SUR-
VIVOR, &c.

C. was master of a vessel, under a charter-party made in 1864, which contracted for a voyage from Philadelphia to Beaufort. He put A. in charge, who sailed the vessel to Beaufort. On arriving at Beaufort, A. was ordered, by the officer in command, to sail to Charleston. The original charter-party was endorsed "fulfilled," by said officer, and a new one drawn, with A. as master, for the voyage from Beaufort to Charleston. A claim for demurrage having arisen against the government, on this latter voyage, and the same having been paid by the government, it was held—

1. That the master of the vessel alone, on the voyage from Beaufort to Charleston, had the right to receive this demurrage, and on his death, such right would go to his personal representatives.

2. C. was not the master on the said voyage. The forcible act of the government utterly destroyed the relationship existing between C., as master, and the owners of the vessel, and created a new relationship between the government and the owners, to which C. was not a party.

---

On rule to show cause why a new trial should not be granted.

Hill v. Stetson.

In this case it appeared from the evidence that William W. Cook, deceased, owned five-sixteenths of the barque Tillie Van Name, in common with the plaintiffs and others. That in 1864, there was a contract between the owners of the vessel and William W. Cook, that he was to take and sail her as master, receiving one-half of the net proceeds of her freight and earnings, and dividing the other half among the owners in proportion to their shares. Cook was, therefore, a part owner, having an interest of about one-third, and was also master of the vessel. He had the exclusive control and management of the barque, so long as he continued master, with the liability to account to his co-owners for the net freight and earnings. Among the earnings is demurrage, which is the delay beyond the lay days allowed in the charter-party, caused by the charterer.

The defendant in this cause was sued for $8186.25, received by him from the United States for demurrage, while the vessel was being repaired at Baltimore, after sustaining injuries from the government boats in Charleston harbor, which she was supplying with coal.

Stetson, the defendant, obtained the charter for carrying coals for the government for Captain Cook, for which he charged a commission, and made a subsequent arrangement with him to collect this demurrage, which was disputed, from the government.

He collected it in December 10th, 1869, and, by receipts, shows that he has accounted to Louis P. Cook, the administrator of Captain William W. Cook.

After the vessel was chartered and loaded with coal at Philadelphia, Captain Cook, who was sick, requested Captain Arnold to take her to Beaufort, South Carolina.

She was chartered for this voyage in the name of Captain Cook. After her arrival at Beaufort, Admiral Reynolds, in command of the station, wished the coal taken to Charleston harbor.

To induce Captain Arnold to go, the commanding officer

endorsed his first charter as completed, and, as he says, made out a new one to him, as master and agent of the owners.

This last charter he says he delivered to Captain William W. Cook, on his return to Baltimore, and transferred all his papers to him. Cook took charge of the vessel, of her repairs, and the collection of the expenses and demurrage, through the defendant, Stetson, who advanced all moneys required by him while the barque was at Baltimore. The bill for repairs amounted to $7720. The demurrage claimed was $8186.25. The former was paid; the latter was disputed by the government, hence the delay in collecting it until after Captain Cook's death, December 10th, 1869.

Argued at February Term, 1876, before BEASLEY, CHIEF JUSTICE, and Justices SCUDDER, VAN SYCKEL and WOODHULL.

For the plaintiff, *William H. Vredenburgh.*

For the defendant, *A. C. Scovel* and *A. Flanders.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. I think the rule in this case should be made absolute.

The ground of this conclusion is, that, in my opinion, William W. Cook was not the master of the vessel in question, by force of the charter-party executed at Beaufort in August, 1864.

The original charter of this vessel contracted for a voyage from the port of Philadelphia to Beaufort. She carried coal for the navy department. Cook was master for this voyage, and he put John Arnold in charge in his stead. Arnold sailed the vessel from Philadelphia to Beaufort. Arriving at the latter place, he was told by the naval officer in command, that the vessel must go to Charleston. To this he objected, but he was informed that the exigencies of the service required it, and that, unless he chose to comply with the com-

mand, his vessel would be taken from him and sent on this new voyage. Arnold then gave way. The original charter-party, providing for the voyage from Philadelphia to Beaufort, was endorsed "fulfilled," and a new one drawn with respect to the voyage from Beaufort to Charleston. A claim against the government, for demurrage, arose on this latter voyage, and the amount coming in dispute, the defendants were employed by Cook to take it in hand and collect it, the agreement providing for their compensation by a certain share of the sum to be realized. This claim having been collected by the defendants, and in the meantime, Cook having died, they made a settlement with his administrator. The validity of that settlement, it is obvious, depends entirely on the fact whether Cook was the master of the vessel on the voyage from Beaufort to Charleston. If, during this time, he was master of the vessel, he had the right to receive this demurrage, and after his death, said right would go to his personal representative. The law to this effect is clear.

But I have failed to see the force of the contention that Cook was master on the voyage from Beaufort to Charleston. He had undertaken to act as master from Philadelphia to Beaufort, and, in such capacity, represented the owner of the vessel, and was clothed with large discretionary power. But neither he nor the owners had agreed that if the government saw fit to sequester this vessel and apply it to the public service, that he would continue to be its master. Nor was Arnold authorized to assume any such obligation for him, nor did this substitute of his attempt to do any thing of the kind, for he took the new charter-party in his own name as master. The forcible act of the government utterly destroyed the relationship existing between Cook, as master, and the owners of the vessel, and created a new relationship between the government and the owners of the vessel, to which Cook was not a party. Suppose the government had kept this vessel in its service for two years, sending it from place to place, can it be pretended that during such time Cook would have remained master, and, as such, would have been answerable for

all those expenses for which a master is responsible ? A liability to such a burthen was not incurred by him in express terms, under his contract to sail the vessel to Beaufort, nor does it arise, by implication of law, out of such contract. Nor after the voyage had been completed, could he, with the assent of Arnold, elect to consider himself master ; such a privilege would have given him the unfair advantage of either accepting or rejecting the situation after the event had shown its gains and losses. I have, consequently, concluded that Cook was not master for the voyage in question, and that the right to demurrage did not settle in him exclusively, and as a legal result the defendants, after his death, could not make their settlement with his administrator. This result is not to be regretted, as that settlement appears to have been made on grounds which are not consistent either with fair dealing or with the contract between the parties.

The cause must be re-tried.